RUSSELL TRANSFER, INC.

*v.*

ARCH A. MOORE, JR.,

*Governor Of The State Of West Virginia*

(No. 13551)

Decided March 3, 1975.

*Robert E. Douglas* for relator.

*Chauncey H. Browing*, Attorney General, *Cletus B. Hanley*, Deputy Attorney General, *James A. Swart*, Assistant Attorney General for respondent.

SPROUSE, JUSTICE:

This is a mandamus proceeding in which the petitioner, Russell Transfer, Inc., asks that the respondent, Arch A. Moore, Jr., Governor of the State of West Virginia, be required to include the sum of $44,825.17 within the section of his 1975–76 budget bill, entitled "Awards for Claims Against the State".

The Court of Claims of this State on December 4, 1973, granted an award of $44,825.17 to the petitioner. The facts surrounding the award, while not important for resolution of the issues presented here, provide a background for an understanding of the case. The claim was based upon the refusal of the State to honor a one-year contract for the transportation and warehousing of all alcoholic beverages by the petitioner, a nonresident common carrier. Although the petitioner was the successful bidder for the duly executed contract, evidence before

the Court of Claims indicated that the contract was unilaterally cancelled because of the Governor's policy favoring West Virginia bidders. No statutory authority nor written rules or regulations articulated such a policy, nor had the policy been formally communicated to the employees in charge of purchase procedures. The contract was subsequently awarded to another company after different specifications for new bids made the petitioner ineligible to bid.

The petitioner in the Court of Claims sought damages in the amount of $183,496 and was awarded $44,825.17. The Court of Claims found: "The evidence is uncontradicted in this unusual situation and clearly brings us to a legal conclusion that a valid contract was executed between the parties, enforcible in any court of law, signed and approved in compliance with the statutes of the State of West Virginia * * *."

The procedures followed for including the award in the budget created the issues to be determined on appeal. The clerk of the Court of Claims certified the award to the Department of Finance and Administration on December 18, 1973, as required by Code, 1931, 14-2-23, as amended. The Legislature thereafter in the 1974 Session, following the statutory scheme for declaring a moral obligation of the State, passed a claims bill which included petitioner's claim. This bill was signed into law by the Governor. In the same Session, the Legislature passed the budget bill which included an amount for the petitioner's award. The Governor vetoed this item of the budget.

In November, 1974, and January, 1975, the clerk of the Court of Claims again certified to the Department of Finance and Administration claims awarded by the court, but the petitioner's award was not included in this certification. No amount representing the petitioner's award was included in the budget bill submitted by the Governor to the 1975 Legislative Session. The petitioner, thereafter, filed a petition in this Court for a writ of mandamus requiring the Governor to include that amount in the budget bill.

There are two principal issues presented by this mandamus proceeding: (1) Whether it was necessary for the petitioner's claim to have been recertified in 1974 in order to be included in the 1975 budget; and (2) whether an amount awarded by the Court of Claims and approved by an act of the Legislature becomes a part of the Legislative Budget which must be submitted as a part of the budget bill prepared by the Governor regardless of certification.

Code, 1931, 14-2-23, as amended,

> "The clerk shall certify to the department of finance and administration, on or before the twentieth day of November of each year, a list of all awards recommended by the court to the legislature for appropriation. The clerk may certify supplementary lists to the governor to include subsequent awards made by the court. The governor shall include all awards so certified in his proposed budget bill transmitted to the legislature."

The claim in 1973 was certified to the Department of Finance and Administration after the last date allowed by statute for that year, i.e., in December, 1973. However, the question whether there was substantial compliance with the requirements of the statute in 1973 to permit consideration of the claim in the 1974 Legislative Session is not before us. The Legislature, treating it as appropriate for that year, passed the act creating the State obligation and made a parallel appropriation in the budget bill. The budget item was vetoed by the Governor. The question that arises is whether the single 1973 certification by the Court of Claims has a continuing effect requiring the Governor to submit the award as a part of the budget bill in succeeding years.

We think this would be an unwarranted and strained interpretation of Code, 14-2-23. When a statute is clear and unambiguous and the legislative intent is plain, it is the duty of the Court to apply the statute in accordance with the legislative intent therein expressed without re-

sort to interpretation. *Canyon Public Service District v. Tasa Coal Company,* W. Va., 195 S.E.2d 647; *State v. Bragg,* 152 W. Va. 372, 163 S.E.2d 685. If the intention of the Legislature is to make compliance with the provision of a statute essential, the statute is mandatory in its requirements; but where compliance is not essential, the provision is directory. *State ex rel. Kennedy v. Boles,* 150 W. Va. 504, 147 S.E.2d 391. Frequently, provisions relating to the time when an act is to be accomplished are not regarded as the essence of a statute and are held to be directory. *Canyon Public Service District v. Tasa Coal Company, supra*; 73 Am. Jur. 2d *Statutes* Section 18, page 279. Here, however, the provisions of Code, 14-2-23, have not been satisfied, whether they be considered mandatory or directory. The statute provides in part that: "The clerk shall certify to the department of finance and administration, on or before the twentieth day of November *of each year,* * * *." Even if the time provisions were directory, the plain and unambiguous meaning of this language contemplates an annual certification prior to the next succeeding legislative session. The certification of a claim in 1973 for consideration in the 1974 Legislative Session is not in substantial compliance with the requirement that any claim considered in the 1975 Session be certified on or before the 20th day of November, 1974. The petitioner's request for relief in mandamus must fail for the single reason that these requirements of Code, 14-2-23, were not satisfied for submission to the 1975 Legislature.

The petitioner further contends that the Court of Claims award is a part of the Legislative Budget and as such must be constitutionally included by the Governor in his budget bill regardless of any statutory requirements. It is true that this Court has held that the Governor is prohibited under the "Separation of Powers" doctrine of Article V, Section 1, of our Constitution from vetoing the Legislature's estimated budgetary requirements properly prepared and submitted by that body for inclusion in the budget bill. *State ex rel. Brotherton v.*

*Blankenship*, W. Va., (decided January 30, 1975). If the petitioner were to benefit from this theory, we would have to find that a Court of Claims award was a part of the Legislative Budget and that it had been properly included in the legislative estimate and submitted to the Governor for inclusion in the budget bill.

In *State ex rel. Stollings v. Gainer*, 153 W. Va. 484, 491, 170 S.E.2d 817, 822, this Court said:

"The Court of Claims is advisory and recommendatory in character to both the legislature and state agencies * * *. Its function in that manner is not judicial. It is created by the legislature with one of its purposes that of conducting investigations in aid of legislative actions for obtaining information necessary to enable the legislature to discharge its functions and to exercise its powers of legislation. * * *."

In *Stollings* we were not considering the character of the Court of Claims in the same context as here. Nonetheless, the Court felt then that the claims body was legislative in nature, and we perceive no reason to deviate from that holding. This does not mean, however, that the claims approved by it are part of the Legislative Budget. Article VI, Section 51B(3) states:

"Each budget shall embrace an itemized estimate of the appropriations, in such form and detail as the governor shall determine * * *: (a) For the legislature as certified to the governor in the manner hereinafter provided; * * * (d) for payment and discharge of the principal and interest of any debt of the State created in conformity with the Constitution, and all laws enacted in pursuance thereof; * * *."

It is clear that the Court of Claims awards have not been considered or treated as part of the Legislative Budget because the constitutional procedures for submitting a Legislative Budget have not been utilized. The claims have been routed into the budget under the provisions of Code, 14-2-23, by certification from the clerk of

the Court of Claims to the Department of Finance and Administration. They are generally listed in the budget under the accounts of the various departments. If indeed we would hold the Court of Claims awards to be part of the Legislative Budget, Code, 14-2-23, would be in direct conflict with the provision of Article VI, Section 51D(9) of our Constitution which provides in part:

"* * * The estimates for the legislative department, certified by the presiding officer of each house, * * * shall be transmitted to the governor in such form and at such times as he shall direct, and shall be included in the budget."

It would appear, however, that the Legislature in approving claims against the State would create debts of the State. After satisfaction of all statutory requirements, including those contained in Code, 14-2-23, the debts become final unless subjected to a successful judicial attack.

Although the Court of Claims is a legislative body designed to assist the Legislature in its deliberative functions, the claims ultimately accepted by the Legislature as obligations of the State are accepted as obligations of the individual branches or departments of government. Our Constitution, Article VI, Section 51B(3) (d) requires the Governor to include such an item "for payment and discharge of the principal and interest of any debt of the State * * *." After such claims are properly approved and processed, the Governor is constitutionally mandated by Section 51B(3) (d) to include these amounts in the budget bill.

The question then becomes whether the clerk of the Court of Claims, after the Governor's veto of a Court of Claims budget item, may recertify the item under Code, 14-2-23, in succeeding years or whether the Legislature must reenact that item as part of a Court of Claims bill. Since the Governor approved the Court Claims bill containing the petitioner's claim and only vetoed the subsequent budgetary item funding the claim, it is obvious that the claim is still alive and should be recertified by

the clerk of the Court of Claims for the succeeding regular sessions of the Legislature.

In *Traverse Corporation v. Latimer*, W. Va., 205 S.E.2d 133, we held in Syllabus Point 2:

> "'A writ of mandamus will not issue unless three elements coexist (1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.' Point 1 Syllabus, *Fairlawns Homes, Inc. v. City of Morgantown*, W. Va., [182 S.E.2d 48] (decided June 22, 1971)."

In view of the fact that the petitioner has not shown a compliance with the requirements of Code, 14-2-23, it has no clear legal right to the relief sought, and there is no legal duty on the part of the respondent to include petitioner's claim in the budget bill for the 1975 Regular Session of the Legislature.

For reasons stated in this opinion, the writ of mandamus prayed for is denied.

*Writ denied.*