# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**DAVID SOCHA,**
**Plaintiff Below, Petitioner**

**v.) No. 25-ICA-21**   (Cir. Ct. of Marion Cnty. Case No. CC-24-2024-C-100)

**LEAFGUARD HOLDINGS, INC., and**
**LEAFGUARD OF PITTSBURGH,**
**Defendants Below, Respondents**

**FILED**
**September 30, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner David Socha appeals the December 6, 2024, order from the Circuit Court of Marion County, which granted the motion to dismiss and compel arbitration filed by Respondents Leafguard Holdings, Inc., and Leafguard of Pittsburgh. Respondents filed a response.[1] Petitioner filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The facts of this case are not disputed. On September 12, 2020, the parties entered into an agreement for the installation of a home gutter system at petitioner's residence. Central to this appeal, the agreement contained an arbitration provision, which states:

> Arbitration of Disputes: The parties agree that any and all controversies ("Claim") arising under or relating to this Agreement may, at the election of either party, be subject to binding arbitration by one arbitrator under the Consumer Rules of the American Arbitration Association with the arbitration to be held in the judicial district in which you reside. Each party shall be responsible for its own fees and costs, unless otherwise determined by the arbitrator; however, the party demanding arbitration shall pay the applicable filing fee. This agreement to arbitrate, and any award, finding or verdict of or from the arbitration, will be specifically enforceable under the prevailing law of any court having jurisdiction. Any arbitration proceeding brought

---

[1] Petitioner is represented by Jeffrey M. Strange, Esq. Respondents are represented by Garrett M. Spiker, Esq.

under this Agreement, and any award, finding or verdict of or from such proceeding shall remain confidential between the parties and shall not be made public. You agree that you will not assert a Claim on behalf of, or as a member of, any group or class in either an arbitration proceeding, a private attorney general action, or in any other forum or action; however, this limitation does not apply to any lawsuit or administrative proceeding filed against Leafguard by a state or federal government agency even when such agency is seeking relief on behalf of a class of customers.

Respondents completed the gutter system installation around September 16, 2020. According to petitioner, within a few weeks of the installation, the first significant rainfall revealed leaks and potential faults with the gutter system.

On March 11, 2024, petitioner filed his Demand for Arbitration with the American Arbitration Association ("AAA") against respondents. After receiving petitioner's demand, AAA sent the parties a series of three letters dated March 22, 2024, April 9, 2024, and April 24, 2024. The letters were mailed to petitioner's counsel and to respondents at their Pittsburgh, Pennsylvania address and directed to the attention of an individual named Mark Walsh. Of import to this case, the March 22, 2024, and April 9, 2024, letters noted that respondents had not remitted payment for their portion of the arbitration fees, and that failure to timely pay the fees could result in AAA declining to arbitrate the dispute. The initial deadline for payment was April 8, 2024, which was extended to April 16, 2024, in the second letter, and the outstanding fee was $675. When payment was not received, AAA issued the April 24, 2024, letter informing the parties that due to respondents' nonpayment, it was declining to arbitrate the dispute and closing the case.

Notably, prior to issuance of the April 24, 2024, letter, respondents retained local counsel who e-mailed petitioner's counsel on April 17, 2024. In this e-mail, local counsel indicated receipt of petitioner's demand for arbitration and inquired as to whether AAA had assigned a case manager to the arbitration. Petitioner's counsel did not immediately respond to local counsel's inquiry.

On May 21, 2024, respondents' corporate counsel, who is located in New Jersey, sent an e-mail to AAA, indicating that she had just received AAA's March 22nd, April 9th, and April 24th letters in a single envelope, that the letters had been incorrectly sent to the Pittsburgh office, and that respondents' nonpayment was inadvertent. Corporate counsel apologized for the unintentional oversight and expressed respondents' desire to make immediate payment and utilize AAA's services.

On May 23, 2024, petitioner's counsel responded to local counsel's April 17, 2024, e-mail, advising that AAA had dismissed the case due to respondents' nonpayment of fees and that petitioner was preparing to litigate his claims in circuit court. On May 24, 2024, local counsel e-mailed AAA, stating that they had just been informed of the AAA's

2

decision not to arbitrate the case, and that they had never received notice from AAA regarding fees owed or that petitioner had perfected his claim. Local counsel informed AAA of respondents' immediate willingness to pay all costs to reinstate the action (including any fees owed by petitioner), and inquired about the necessary steps to move the arbitration forward with AAA. Local counsel sent AAA a follow-up e-mail on June 6, 2024, reiterating the request.

AAA responded to local counsel's prior e-mails in an e-mail dated June 7, 2024. At that time, AAA informed respondents that the case would remain closed and outlined the steps respondents would have to take in order to return to good standing with AAA. The e-mail further indicated that it would comply with a court order compelling arbitration between the parties.

Petitioner filed a five-count complaint in circuit court on July 1, 2024, alleging negligence, fraud, and breach of contracts claims related to the gutter system installation. On August 13, 2024, respondents filed their motion to dismiss the complaint and compel arbitration. Respondents contended that the AAA's dismissal of petitioner's earlier demand for arbitration was due to respondents' "inadvertent oversight"; the plain language of the parties' agreement establishes that the parties agreed to arbitrate any dispute and petitioner's exercise of his right to arbitration bound the parties to arbitration; and the language of the arbitration provision did not state that AAA must be used to arbitrate the dispute, but rather, it only required that AAA's procedural rules govern the proceeding. Respondents further stated that they were willing to pay both parties' fees if the case was returned to arbitration.

Petitioner filed a response in opposition to the motion on September 5, 2024. Petitioner argued that respondents intentionally ignored AAA's correspondence in a willful attempt to avoid arbitration. Thus, it must be concluded that respondents waived their right to arbitration. Petitioner also disagreed with respondents' contention that the arbitration provision did not require the exclusive use of AAA to arbitrate the parties' disputes, and asked the circuit court to conclude that respondents' conduct rendered the arbitration provision null and void. Petitioner included the AAA's March 22, 2024, April 9, 2024, and April 24, 2024, letters as exhibits to this response.

The circuit court held a hearing on the motion to dismiss on November 4, 2024, and on December 6, 2024, the court entered the order presently on appeal. In its order, the circuit court found that there was no dispute between the parties that the agreement contained a valid arbitration provision. The court determined that it was clear from the language of the agreement that the parties intended to arbitrate any claims related to the agreement, and that the claims asserted in the complaint by petitioner are the type of claims contemplated by the arbitration provision. The circuit court found that respondents' nonpayment of AAA's fees was insufficient to establish waiver, the arbitration provision

did not limit the administration of the arbitration to AAA, and the spirit of the agreement favored arbitration.

The circuit court granted respondents' motion to dismiss and directed the parties to arrange for arbitration within thirty days and to complete the arbitration in a reasonable amount of time.[2] Respondents were also ordered to pay petitioner's arbitration fees. The complaint was dismissed without prejudice and this appeal followed.

In this appeal, our standard of review is de novo. Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyon Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995) ("Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."); *Bayles v. Evans*, 243 W. Va. 31, 38, 842 S.E.2d 235, 242 (2020) (applying de novo standard to direct appeal of order granting motion to dismiss and compel arbitration).

Petitioner raises three assignments of error on appeal. At their crux, they all make the overarching argument that the circuit court's decision was in error because respondents waived their right to arbitrate petitioner's claims. Therefore, we combine and restate petitioner's assignments of error as that singular issue for the purposes of this appeal. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating the general proposition that related assignments of error may be consolidated for ruling); *Jacquelyn F. v. Andrea R.*, No. 16-0585, 2017 WL 2608425, at *1 n.2 (W. Va. June 16, 2017) (memorandum decision) (restating assignments of error where they involve clearly related issues); *Perry v. Ravenscroft*, No. 24-ICA-134, 2024 WL 5002991, at *3 (W. Va. Ct. App. Dec. 6, 2024) (memorandum decision) (consolidating and restating petitioner's assignments of error on appeal).

Throughout his appeal, petitioner asserts that waiver applies because under the facts of this case, respondents' conduct can only be interpreted as deliberate, calculated, and intentional behavior aimed at avoiding its legal obligation under the agreement to arbitrate the parties' disputes with respect to the gutter system installation. This argument is not convincing.

Regarding the interplay between waiver and arbitration agreements, it has been observed:

---

[2] It is undisputed that the parties did not arrange for arbitration within thirty days, and petitioner raises this issue as a basis for relief on appeal. However, any alleged noncompliance with the December 6, 2024, order is not before this court and is otherwise not relevant to the matter at hand. Rather, our review on appeal is limited to whether the circuit court erred in its application of the law to the facts of the case as they existed at the time of the November 4, 2024, hearing on respondents' motion.

The right to arbitration, like any other contract right, can be waived. To establish waiver of a contractual right to arbitrate, the party asserting waiver must show that the waiving party knew of the right to arbitrate and either expressly waived the right, or, based on the totality of the circumstances, acted inconsistently with the right to arbitrate through acts or language. There is no requirement that the party asserting waiver show prejudice or detrimental reliance.

Syl. Pt. 6, *Parsons v. Halliburton Energy Servs., Inc.*, 237 W. Va. 138, 785 S.E.2d 844 (2016).

Rooted in contract law, the doctrine of waiver has been defined as follows:

A waiver of any right has been defined as the voluntary, intentional relinquishment of a known right. The essential elements of a waiver, within the definitions already given, are the existence, at the time of the alleged waiver, of a right, advantage, or benefit, the knowledge, actual or constructive, of the existence thereof, and an intention to relinquish such right, advantage, or benefit. Voluntary choice is of the very essence of waiver. It is a voluntary act which implies a choice by the party to dispense with something of value, or to forego some advantage which he might at his option have demanded and insisted on.

*Hoffman v. Wheeling Sav. & Loan Ass'n*, 133 W. Va. 694, 712-13, 57 S.E.2d 725, 735 (1950) (citations and quotations omitted).

As stated by our Supreme Court of Appeals:

When assessing waiver, we are mindful that there is a strong public policy favoring arbitration agreements and that the party asserting waiver carries a heavy burden. One legal treatise has explained that:

> [I]n view of the strong public policy favoring arbitration agreements, the courts are required to resolve any doubt concerning waiver in favor of arbitration. Close questions whether a waiver of the obligation to arbitrate has occurred are to be resolved in favor of arbitration. Moreover, there is a strong presumption against the waiver of contractual arbitration rights. The burden of persuasion lies with the party claiming that the right to demand arbitration has been waived. The burden on one seeking to prove a waiver is a heavy one.

21 Williston on Contracts § 57:16 (4th ed. 2023) (internal footnotes omitted).

5

*Ampler Burgers Ohio LLC v. Bishop*, 250 W. Va. 269, 281, 902 S.E.2d 818, 830 (2024).

Petitioner argues that respondents waived their right to arbitration by failing to timely pay the AAA's required fee. In concluding that waiver had not been established in this case, the circuit court concluded that the contract did not mandate use of the AAA and that respondents' delay in paying their fee was a technicality. Accordingly, the circuit court found that petitioner did not satisfy the heavy burden of demonstrating waiver. After reviewing the record in this matter and considering the totality of circumstances, we agree. As such, we decline to disturb the circuit court's decision to dismiss the complaint and compel arbitration.[3]

Accordingly, we find no error and affirm the circuit court's December 6, 2024, order.

Affirmed.

**ISSUED:** September 30, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

[3] We decline to consider two additional arguments raised by petitioner. First, he argues that the agreement was a contract of adhesion and that he did not sign the agreement. However, petitioner's complaint does not assert these claims, nor were they clearly raised before the circuit court in opposition to the motion to dismiss. Therefore, this argument is not subject to review in this appeal. *See In re E.B.*, 229 W. Va. 435, 467-68, 729 S.E.2d 270, 302-03 (2012) (citations and quotations omitted) ("This [C]ourt will not review questions which have not been decided by the lower court."); *Shaffer v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999) ("Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered."). Lastly, petitioner contends in passing that the circuit erred in finding that the arbitration provision does not exclusively require the parties to use AAA to arbitrate their dispute. Because this argument was not properly developed below, it is waived on appeal. "'Although we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.'" *Maher v. Camp 4 Condo. Ass'n, Inc.*, 249 W. Va. 433, 439 n.8, 895 S.E.2d 836, 842 n.8 (Ct. App. 2023) (quoting *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996)).